Would all those who are going to participate in the argument identify yourselves for the record, and if there are any other counsels of record that wish to formalize their appearance here, you may also step up and so identify yourselves with the parties whom you are representing. Your Honors, Carl Elitz for the people of the State of Illinois. Your Honors, Albert Sturdivant of Carper, Lipson, Whelan on behalf of Illinois American Water Company. James E. Wagon, Special Assistant Attorney General on behalf of the Illinois Commerce Commission. Well, at least I know Mr. Elitz was not impervious to the notion that the time was being reduced because he spent some time. Why don't you proceed when ready. May it please the Court, Your Honors. Illinois Assistant Attorney General Carl Elitz for the people of the State of Illinois. Unfortunately, I'm going to have to argue the most of my time over an accounting issue, whether unamortized prior rate case expense should be included in the current rate set for the water company. The Public Utilities Act requires the Commission to set rates that are just and reasonable. By rule, the Commission has something called the test year rule, which the Illinois Supreme Court has endorsed. The rule requires the company to set up a 12-month period where they look at revenues that are expected to come in during that time. Well, actually, to look at the costs that are expected to be incurred during that time. Now, what if it's a legally mandated expense? Does that same test year rule apply in that same manner? In general, yes, Your Honor, although there's been exceptions caused out by the Commission for things like water tank painting that are required, I suppose, or tax obligations that the company has. And there are times where the Commission has allowed the company to treat assets or give special charges. What's the rationale behind allowing that exception? The rationale, I believe, Your Honor, is that the costs are required. The company has to incur them. You don't really need to do a lot of thinking about that. They're entitled to recover them because they're necessarily going to be costs. But in a test year rule, they're also entitled to their rate expense. True? Yes, they're entitled to their rate expense. So the costs that fluctuate and that they can't predict very well, we look to the test year to estimate. And with regard to mandated costs, we don't really need to. But if there's a suggestion that the rate expense should be permitted as part of the test year, wouldn't that suggest that perhaps might be one of these exceptions? That from the previous rate, it had already been determined that they were going to be permitted to get a portion of that? I'm trying to understand the other side's position. I'm trying to. And I try to understand. I understand that they're trying what I would argue is trying to fit a square peg into a round hole. Because the type of cost that we're talking about in this case, rate case expense, are variable costs that are not required by any particular statute or rule. They are going to incur them, sure. But they're going to incur costs with regards to all of the costs that are associated with bringing water to their customers. Well, when you say they're not allowed for by any particular rule, I thought that in about 1971, this idea that an expense, the expense for actually putting on this rate case was something that was allowed. The 1971 Supreme Court decision, I don't recall the name, but you're correct, I remember the year, that talks about that, says that rate case expense is a case, is an expense that the company is entitled to include. As opposed to the shareholders bearing that expense. Exactly. Rate payers were, at least the Supreme Court felt that it was a sufficient, that the expenditure was a sufficient benefit to the rate payer to have the rate payer pay that expense. But there is something unique, nevertheless, about rate case expenses, as opposed to ordinary test year expenses. Because ordinary test year expenses just last, presumably, the way it's set up, they're contemporaneous with the chronological period of time for which the recovery is extracted. With rate paid expenses, that's not the case. So that, for example, if it were amortized, presumably you would have, so that it would only last until the next rate case was filed. Would you be contesting that? I think I understand your question. No, Your Honor. So you're only questioning the expense when it overlaps with the new rate case. But nevertheless, it was an expenditure already sustained in that earlier period. And you simply, at this point, attempt to say that that's a risk that the shareholders take whenever they file a rate case, that if there's a period of inflation or whatever it is that propels the utility to seek a new rate, that it will have to eat whatever is left of those expenditures in the last rate case, which they sustained that have yet been uncollected. Yes, Your Honor. Now that's of a different character from your ordinary test year expenses. I think you've summed up exactly what I was going to present here. The test year, I'm sorry, the rate case expense is different than most other expenses because it always or almost always goes over a year. So the commission rightly says this has to be divided up and you can't collect all of it in every year going forward because that would overcompensate the company. If the rates are expected to be three-year rates, for example, then we'll allow the company to collect a third every year going forward. The interesting thing here is that it doesn't stop in year three. It goes to year four and year five and year six. So every year the commission assumes that there is some component of rates that should be out. Well, that's something I don't understand. I don't quite grasp that. If it's set up for three years, why does it keep going? And it's because of the test year rule, Your Honor. It locks the company up. And the commission and the people too. The whole point of it is to match the cost the company incurs with the benefits.  And we don't go back and jigger those rates once they're established. And as long as no one comes to the commission and says the rates have to be changed, the company can keep charging the rates they charged last year. And the rates they charged last year happen to include this component. And so no one really can complain because that's sort of the deal. Now, actually, if it were amortized only and amortized until the actual amount is recovered, rather than amortized until it theoretically ceases of its beneficial impact for the rate payer by virtue of the new rate having been filed. So that, let's say, if it was $100,000, it would be amortized to allow the entire $100,000 to be collected. Would you be contesting it now? And the next question would be how would that be different from a rider? That's the way I always understood what an amortization was, Your Honor. It takes an asset. It drops it over a period of years until it gets to zero. And then the asset is gone and everyone moves on. But rate cases are different. And it's because of this test year model. It's because we look to the test year and we say the company gets to charge that forever if it wants to as long as no one objects about the rate. So what happens is... Why isn't there the same problem then in allowing it in any test year? Can you... Well, I'm not... I don't understand. How can you say it's permissible in the test year but at some point... We concur to the test year. We know what the bill from the law firm or the expert is. We concur to the test year. The commission says this is a reasonable bill but it's going to provide value for years. And so we're not going to let you put this in the annual rate because it's not going to be recovered in that one year. We think you should be recovered over a period of years. And the commission tells everyone what that period should be. So let's say it's three years. Then the commission says a reasonable component of rates is not the million dollars or $100,000, as your example was, not the $100,000 that was taken but a third of that. I'm embarrassed to say $100,000 because one of the cases you rely on involves only $15,000. Yes, that's the 1971 case, Your Honor. It's a $10,000 amortization. Yes, yes. The word amortization and the word normalization and the word allocation, they don't really fit what's going on here. And that's partly why it's confusing, I think, to people. Because amortization in a normal circumstance has a meaning that's different. Here it's just, and our witness called it normalization. And here what's happening is there's an amount allocated for the test year and we assume that every year after that the company can charge it as a component of their rates. And that's fair. Now the thing... And here's my question. Why is that fair? I have an answer. I guess I can tell you. The rates are set for the company and after the rates are set, the statute says to the company, those are your rates. And if the company can figure out a way of lowering its costs, nobody gets to come back and say, well, we should have a rate, or they don't anyway. And the company can take all the savings it has as profit. And that's fair. And that's just the way the system is designed to make the company operate efficiently. The problem comes in a case like this one where the company doesn't get to that rate year that the commission expected it would. And it comes back and says, we incurred $100,000. You said to take a charge or to add the rates, you know, a third of that every year as an estimate of what should be recovered. We have new rate case expense. We're going to use this money for the current rates. Please allow us that. And we never really got the money back from the old one, and we have that too. And what's really going on here is there's double counting because the current rates, and under the test year rule, everything looks forward. How much is the company going to need next year and the year after and the year after that? We don't look back in time. The fact that the company hasn't recovered everything it thought it was going to recover is not a function that is not something that should be allowed to them to recover if they want to recover a new rate. Let me ask as this, you know, being basically dependent upon the education which your briefs gave us rather than having the experience that the commission has and its procedures which it conducts, the expertise that they have. Let's assume that this can go on forever in terms of being there as an established expense. Is the commission bound to treat it as if it were a real expense as opposed to a fictitious expense in determining the new rate? Well, the old rates really are not the thing the commission looks to in setting the new rates. That's why rate cases are so expensive because what we don't look to is we don't look to the old rates, we look to the test years. But do they have to accept the fact that let's shift now from $100,000 to $2.5 million, let's say, which is a little more substantial. Does the commission have to treat that additional expenditure once the original costs have already been recovered as an expense that they cannot penetrate to look behind it in determining how much they're going to allow of the tariff that you may be requesting? I believe the answer is yes. And it's because rates are not recalculated until we have a new rate case. If the company has problems in a given year with one of its expenses, that's tough luck. It has to deal with the rate structure it has and the rate structure is not going to change because they have a difficult year. So it's going to be a dollar-for-dollar serendipity. It's not a dollar-for-dollar serendipity. What's happened is the company's real costs are not reimbursed to them. What's reimbursed to them is our estimate based on the test year. If it gets so bad that the company can't live with the rates that have been established, they can petition and say it's not working. One of your arguments sort of a public policy idea that this whole thing of allowing this prior rate expense in the test year encourages the utilities to come and ask for rates as soon as they can before they've even gotten this other prior expense. Yeah, because they'll get all the money that they need for the current rate case and they'll recover anything that is left for the old rate case. There's no incentive for the company to be efficient and to live within the rate if the commission is going to use the rate this way. The point I really must emphasize is that this test year rule is designed to anchor costs to the benefits the current rate payers are getting and it breaks that connection. What I don't understand is putting aside this prior rate expense that was permitted in 2007. Going forward in 2010, if there's an expense, a rate paid expense that's allowed and it's spread out over time, at some point let's say that utility doesn't come in for an increase, but they've already achieved or actually they've gotten this money back. So why wouldn't that, in that sense, why would you say that this is a good idea in the first instance? Because the rates are locked in place and they stay locked in place until there's a new rate case. It creates predictability in rates. We know what the company is going to be able to charge consumers. Consumers know what they're going to have to pay. And the fact that there happens to be one cost that the company can improve over and make money on is not a bad thing. And the other side is that when the company has costs that are, you know, beyond its means, the consumers benefit there because that's the company's problem. They have to live within the rate structure. If they ask for a new rate structure, they can have it. But what they can't have if they ask for a new rate structure is a collection of the old costs from the old test years because that's what the whole idea of the test year is designed for. What would you say best supports this notion and why? Your Honor, I apologize. I don't know that I can give you the best case. Obviously, it would be a case for my brief. BPI 2 comes to mind, but I can't tell you. Yeah, but in what sense? I read BPI 2, but tell me why. You're just saying really there isn't a good case. I think with regard to unamortized prior rate cases, there isn't a good case. That's partly what's going on here. This is a longstanding practice of the Commission. What's happened, what's so offensive to the people is that over time, these rates have gone from $15,000 in 1971 to multiple millions of dollars. They actually affect what people are paying on their bills, and that's why the people are upset about this particular practice. It's a longstanding one. The Commission has argued... How much is this one that they wanted to and were allowed to carry over? Your Honor, I believe it was, and I hope one of my co-counsel, my opponent, or the Commission will correct me if I'm wrong, but I thought it was $2.4 million perhaps. Did it carry over from 2007? That was the current. No. The carryover from 2007 was a third of the $1.2 or $1.3 million. It was $4 or $5. Wasn't it actually less than that because it was $200 and something, and then it was going to be spread out again? There was different components to it. It gets more and more complicated as you dig, but we're talking about this principle. It's the same no matter what the numbers are. I don't know if the numbers in this particular case are large, but this is a case where this issue really has been joint. This is the fees and the attorney's fees. Yes, I do. The attorney's fees issue, Your Honor, there's a new statute in Illinois, Section 9229. It requires the commission to assess and specifically address attorney's fees. In this case, there was one witness who testified in favor of the fees on behalf of the staff. That witness reviewed documents and said based on his review it was fair. That was all that was going to be put in the record. The attorney general then said wait. Weren't there like interrogatory type questions? Weren't those all answered? Yes, the company said. Weren't those part of the record? They are part of the record. I'm not sure if they were part of the record before or after the attorney general put into the record its exhibit, but they may have been. But those answers do not meet the requirements of Illinois law that would allow the commission to specifically address and assess. This is a short document that the record has in it showing what the commission's witness used. It's all redacted. There's no way the commission could have considered whether these rates were fair and reasonable. The attorney rates apparently were upwards of $525 an hour. There was one, I think, attorney from Jones Day who billed that rate. So that was just only one attorney? Well, that was the one that I looked at all the rates and I said this one is the highest. They were lower than 525. But actually the hourly rates were only a small component of your objection because you're basically saying they should have followed the criteria in the Fiorido case. My argument is not about the fees at all. I'm talking about time and rate, details and value. Yes, and the type of case. All of those things need to be considered. But also your claim is not that the commission didn't do it. It's that the commission didn't report it. No, it's for purposes of our review. No, my argument is that the commission could not have done it because the record in this case doesn't show anything like the materials that would need to be done to assess. And they couldn't have left their employee to do it because if you look at what the employee actually reviewed, you'll see that these are just names and hours and billing rates. A lot of this has been redacted. What we think should be in this record are the types of things a trial judge would see in any fee shifting case along with a finding by the commission that they've looked at it or considered it. And that just wasn't done here. And we think it should be reversed on that ground as well. I'm sure I've run over my time, Your Honors. If I could just bring up one final point. The other issues in my brief, the management fee question, the public comment question, I would urge the court not to get to those issues because it's my contention, as the commission argues as well, that the company is not in time in its petition. The statute requires them to have filed it within 35 days of the denial of reconsideration and they were 10 days late. Well, first of all, I've got a couple of questions about that and some of which you may prefer to answer now. But certainly I want your colleagues and opponents to be thinking about it. The initial question is which Trump switch? Does the Civil Practice Act, do the Supreme Court rules basically trump the statute or vice versa? And that involves us in the separation of powers determination, which according to at least one of the cases cited gives the Supreme Court the judicial branch with the upper hand, even when there may be some concurrent power to be shared with the legislature, but in the event of conflict, it's the judicial rule that will trump the legislative rule. And the next question would be whether there are really any viability to a cross appeal when there is a legislative rule because the 303 rule, the Supreme Court rule, allows for a strategic determination of whether to file a cross appeal, eliminating the 303 rule would eliminate any strategies to determine whether the appeal that you wish to bring should only be forthcoming when it's a cross appeal or an original appeal since your opponent at that point would be sure to file on the very last day. So in effect, the court certainly wouldn't receive the benefit of the 303 determination in at least providing a climate in which at least one of the parties could decide to forego the appeal if he's not already an athlete. And that does not seem to be a desirable result, but obviously whether it's desirable or not does not necessarily determine the law. But what it does determine is whether a cross appeal is a separate entity from a regular appeal because it has its own policy considerations and consequently is not subsumed under the statute that deals only with direct original appeals. And that's the issue that we're going to be discussing. But I would say, Your Honor, just a quick answer is that we're on administrative review and these are different kinds of cases. They're controlled by the statute. But the rule, the administrative rule does not say anything at all. It doesn't speak to cross appeals. What you're essentially saying is that it's been done away with. Once you decide that a cross appeal is different in nature from a direct appeal, then you cannot necessarily with facility simply argue an appeal is an appeal is an appeal, whether you call it cross or direct, which is what you would like to see. But the question is whether the legislature sees it that way and whether the courts will see it that way since there are different consequences to both types of appeal, to each of them. If I could just say one more thing, I'll try to sit down. This case has important ramifications not only for the Illinois Commerce Commission, but we also have direct appeals in labor relations court cases, educational labor relations court cases. I believe the State Board of Elections has direct appeals. This is an important question. Well, don't you think the city of Chicago, are you saying then we should just disregard that case? Because that case basically says that the court did have jurisdiction when the direct appeal was dismissed and the cross appeal had been filed within 10 days. Your Honors, if I could, I'll leave that to the commission to argue that this is, he's got five or six pages in his brief. I'll stand on my brief on the remaining issues. Thank you very much. May it please the court. Your Honors, my name is Albert Sturdivant, attorney for Illinois American Water. Under the agreed schedule, I have five minutes at the conclusion of this argument during which time I would address any response on the rate case expense issue that the counsel for the commission does not address and any rebuttal issues related to cross appeal. Your Honors, I'd like to start by briefly discussing the issue of jurisdiction that we were just discussing, and I would like to point out that I agree with Your Honors that the cross appeal is a distinct and separate step from the direct appeal authorized by Section 10201 of the Public Utilities Act. Well, they're both direct appeals, but one is earlier in time. That's correct, Your Honor. They're both part of the direct appeal process, and I think the distinction is that the jurisdiction vests with the appellate court at the time of the filing of the petition for review, as the second district noted in the Croizer case. At that point, then, the appellate court's rules control, including the cross appeal rules, as the first district recognizes in the City of Chicago case, when it allowed a cross appeal to continue even though the original appeal had been dismissed. It's well established that the legislature and the courts have concurrent jurisdiction to promulgate procedural rules, but the legislature must let the rules expressly, and as this fifth division found in addressing a similar question related to Section 303A2 of the Supreme Court rules in December 2010 in the People v. Illinois Commerce Commission, the legislature may preempt Supreme Court rules addressing the same issue, only where it expressly exercises authority to promulgate such rules. So if the IPC and the Attorney General were correct here, the legislature would have had to expressly eliminate the ability to cross appeal. Section 10201 is entirely silent on cross appeals. Therefore, the legislature has not expressly eliminated the ability to undertake cross appeal. Well, why can't you say it did by virtue of simply regulating the time for bringing an appeal? That, by implication, it eliminated any special concessions made to those who bring their appeal after another party initiated its. Well, Your Honor, the legislature cannot preempt or override or change the procedures authorized by the Supreme Court. What about the notion that this is an administrative procedure and that we don't get jurisdiction on these administrative cases from the Constitution, but solely from the legislature, and that the legislature dictates what our jurisdiction is? Well, it's correct, Your Honor, that the legislature has authorized the direct administrative review such that a Commerce Commission decision may be appealed directly to the appellate court. However, the Constitution does permit the Supreme Court to establish rules allowing expeditious and inexpensive appeals. So, from that comes the idea... You're talking about the state Constitution, right? That's correct, Your Honor. The federal Constitution allows for any appeals. I apologize, Your Honor, but yes, I'm referring to the Illinois state Constitution. And so, with the concurrent jurisdiction, the Supreme Court rules would control in the event of a conflict, and under the concurrent jurisdiction, the legislature can only preempt the Supreme Court rules expressly. And as the Illinois Supreme Court found in the CERMAC case, there can be no preemption by implication with respect to rules governing direct administrative appeals. And in fact, the Supreme Court has established Rule 335, which governs the rules for direct administrative reviews, and that would make Rule 303A applicable. I don't think that we even need to reach the separation of powers issue because I don't see a conflict between 303A and 10201. 10201 permits the initial appeal to be filed with the appellate court, at which point the appellate court's rules or Supreme Court rules take over, and Section 303A would then permit the cross-appeal. If I may then, Your Honors, I'd like to move to the question of service company fees. The appeal and cross-appeal in this case arise from one rate case order, but I think this is really a tale of two orders. On balance, the Commission got it right, reaching reasonable conclusions based on the evidence, for example, with respect to rate case expense. The FCC's order on the question of management fees, which are also referred to as service company fees, ignored unrebutted evidence to reach unexplained conclusions. As we discussed in our brief at some length, Illinois Americans submitted extensive evidence on management fees, and I will not repeat that extensive description here. I will just point out that no witness contested the need for any service from the service company. No witness claimed that the projected test or cost of any service was inaccurate or disputed that the service company was the lowest-cost service provider. No witness disputed that the water company would save $7 million in the test year by obtaining services from the service company. The order, however, proposes to adjust the test year level of service company fees to cap it at 5% above the amount allowed in the prior case. Well, what about the fact that the Commission asked for certain tests, competitive bidding tests? That's what it would have been in the event of having asked for a competitive bid. So it's just kind of a hypothetical competitive bidding situation, rather than an actual competitive bidding situation. Is it your position that the Commission is basically powerless to express a preference for the kind of evidence it would like in the face of other evidence that may be competent but not as competent? Well, I think, Your Honor, that you're correct that the order said that the competitive bidding information or the cost of services would be set or established had they been obtained through competitive bidding and not actually requiring actual competitive bids. So you are also correct that the Commission has the ability to weigh the evidence. But with respect to the evidence submitted in response to the 2007 order and the evidence, including the evidence of cost comparison, that evidence was uncontested. No witness said that they should have done something differently. They should have used a different methodology. Did they have to do that? The Commission said that they wanted the water company to prepare a study that would demonstrate what the differences would have been had competitive bidding taken place. But I believe there was a concession that this was not a competitive bidding study, except for perhaps the water testing, but it was a market study comparison. That's correct, Your Honor, that it was a market comparison. So wasn't the Commission free to say that this isn't what we wanted? And on the record, there's a concession that, in fact, the bulk of it was a market comparison, not competitive bidding. Well, Your Honor, the Commission may be free to say that, but the Commission did not say that in this order. The Commission did not explain why it ignored the uncontested evidence. Didn't the Commission state in that 300-page order at some point that this was not the study that was requested? Well, the Commission states simply that it finds the studies performed do not represent a reasonable effort to comply. That's what they state in their order. However, they did not explain the basis for that decision, and they are required to, under Section 10-204 of the Act, to provide some analysis sufficient to allow this court intelligent review. The reason that that statement... Well, if this record demonstrates that the study that was actually done was a market study and not a competitive bidding study, isn't that enough for us to determine whether or not the study that was requested and demanded was not complied with, if the order to do that was not complied with? Well, I think two things. One is the record supports the conclusion that there was competitive bidding information in the studies, and the Commission admits in its brief that at least one of the studies was compliant with the order. So the order doesn't explain why, if one study was compliant, why that was or was not sufficient. And the absence of that explanation alone, I think, is enough to warrant a remand. But I would go on to say that even if we were to take... The question is not necessarily one of compliance. Even if we were to take all of the studies and information that the company submitted in response to the 2007 order, there's still the question of what is a just and reasonable level, prudently for management fee expense in the test year. And even without all the evidence submitted... And what was that actual management fee in the test year? It was approximately $21.5 million. And that was how much of an increase from the two years before? It was an increase of approximately 20% over what was allowed in the prior case, although I believe the increase was somewhat less with respect to what was actually incurred in prior years. But my point that I think is key to understand is that even without the evidence submitted in response to the 2007 order... And what in general contributed to this 20% increase? Well, that's... Say that in a nutshell. That's exactly what I'm getting to, Your Honor. The company submitted evidence not in response to the 2007 order that... Historical evidence of the inflation or the increase in rates over a given period of time, which you claim ought to have added up to more rather than less, but I presume it was averaged in some way or another. Well, the evidence is a 5.5%, but I really want to throw you a softball because I really like an answer to the question from whichever source it comes from, including your opponents. Should the commission have such control over the presentation of data, even where it may be arbitrary, where it may ask for more than is ordinarily judicially necessary to reach a reasonable conclusion? For example, could it ask for only Nobel laureates to give testimony as to what the proper rate-making expenses should be and then discard your proof if it's not complied with? How much authority does it have to have? What's your position? And you're in treacherous water. I'm not going to tell you that your answer will be inconsequential to you, but I do really want an answer. Well, I think, Your Honor, the question is, does the commission have authority to enter orders requiring that companies' utilities provide certain information? Not certain information, but certain types of information, when other information may be adequate towards the determination of the issue that it wants to consider. Well, I think the commission would consider and did consider in this order the question of, if they require information, if they require studies, what is the cost of that going to be? What is the cost that's going to impose upon the rate payer and upon the utility to obtain that information? And I think that's something that the commission was— I'm not exactly sure how hypothetical competitive bidding information is elicited without actual competitive bidding, which I think you satisfactorily, at least from my standpoint, point out in your brief, would be very difficult to obtain, and if obtained, quite an imposition to lure companies into bidding for the purpose of supplying information rather than getting the work. I think that's correct, Your Honor, that there were significant practical difficulties with actual bidding, and so there was some actual bid information, but the company developed this methodology of market comparison to provide the equivalent or the proxy for competitive bidding for the purpose of those studies. Well, how could it provide hypothetical competitive bids without actually eliciting competitive bids? Well, the point of the competitive bid requirement is to establish a market cost to compare the service company's cost to. So, the market comparison looks at hourly rates for different services and determines, based on those hourly rates, what a market cost would be to compare. The assumption, the methodology, is designed to approximate what you would get— What is there in the hypothetical competitive bidding that is not already included in your market cost studies? It's a softball. Well, I think that's correct in that the market cost studies, particularly with the inclusion of competitively bid information, provide the equivalent of competitive bidding. But I guess I think I'm running out of time here, but I guess I'd like to return to two points. One is that, as I was saying before, even without the 2007 evidence, the company still submitted evidence explaining the reasons for the increase and supporting its increase and its level of test year management fees. That was the testimony of Mr. Grubb. That testimony stands by itself and was essentially unrebutted. So, even if you throw out everything responsive to the 2007 order, you still have confident evidence, substantial confident evidence, supporting the company's test year level of fees. Well, what teeth would there be in the commission's request if it had to ultimately take public when it doesn't get the evidence that it's looking for? Well, I think the commission can certainly weigh the evidence, but the substantial weight of the evidence, even without the 2007 information, still... Well, let's assume that what the commission may not do, perhaps, or can't do, is to resolve the issue through evidence that is insufficient. Maybe it can't, but that's something that I certainly would like to hear more about. If anybody thinks that it can't, and if the 5.5% resolution was something pulled out of a hat, simply because it was thwarted by not having received the evidence that it specifically asked for, but could it take evidence that is not as substantial as the evidence already submitted, where the evidence submitted was noncompliant? Well, I think, Your Honor, and this takes me to what my second and last point was going to be. I think what the commission cannot do is it cannot impose a 5% cap or an adjustment as a sanction. The commission's brief admits that the adjustment was based strictly on the finding of noncompliance, but it's not appropriate to sanction the company by imposing an arbitrary figure. Well, I don't see where you find in the order that it was a sanction, as opposed to a statement that since we can't get the evidence from the utility that we are looking for, we will look to other evidence. Now, a sanction is a penalty not based on evidence at its core, but here they're not saying that the 5.5% that they did impose was something that was there to punish you. It's evidence that they're allowed to consider independently of your evidence, where they rejected the evidence which you did submit because it wasn't what they wanted. I suppose in that sense there is perhaps an element of sanction there, but not the full-fledged implication of what you might mean by a sanction, which is a penalty based on punishment, deterrence, rather than on evidence of actual costs. Well, Your Honor, and the question of sanction is, again, an example of something the commission just didn't explain what it was doing in the context of this brief. The concept comes from the commission's appellate brief attempt to explain and say this finding is strictly based on noncompliance, which has an element of sanction, particularly given the uncontested other evidence, even if they reject the response to evidence. Well, what's its alternative? To take what the utility decides to give them without regard to what they wanted? Well, I think, Your Honor, even if the commission rejects the evidence submitted in response to the prior order, it still has the responsibility to weigh the evidence submitted, and as I said, there's an entire other set of evidence supporting the tester level of sanction. How would it implement the gravity of its own request and its sense, at least, and you're not contesting the entitlement. I gave you a chance to contest the entitlement of the commission to preordain the kind of evidence it seeks. If you're not contesting that, if they do have the right to characterize, to hone in on what they would consider to be preferable proof from their vantage point, then how would that be enforced if they had to take what you gave them in its place? Then that puts you in the driver's seat, doesn't it? Maybe you should be, but by what frame of legal reference do we determine that? Well, I think you need to look at whether the commission entered an order that it explained and was consistent with the substantial weight of the evidence and didn't act arbitrarily, and I think that's the key here is that the 5% number comes out of thin air. Is an arbitrary application applied for what reason? The order doesn't say. Therefore, it should be remanded for a determination of service company fees consistent with what the evidence is. So your focus is not on the sufficiency of the alternative evidence that you presented, but on the insufficiency of any other evidence that the commission chose to rely on, and that hasn't yet been discussed. You do state in your brief that the figure ought to have been 7.5%, but at least I got the impression somehow, and I'd like to hear something on it if possible, that the 5.5% came from some averaging process. Well, again, that's the problem. The 5.5% number came from the briefs of the Attorney General. There's no witness testimony explaining that that's appropriate or even if the math is correct. So the point we're making in our brief is that we can conduct a mathematical equation and come up with a different number, but, again, you return to the question of the arbitrariness of the 5% and the lack of explanation as to why the commission made the ruling. Was there a person named Smith who testified to this? He testified that the 5% was, in his mind, an appropriate number, but the basis for that was his argument, and the only real evidentiary basis, was that that was consistent with increases in salaries, but the company explained, and nobody rebutted this evidence either, that there were other increases to pensions and depreciation than just the increase in salary driving the increase in management fees, and, again, that evidence does not explain it. I believe I'm well over my time, Your Honor, so I will conclude with that. Thank you. I know there were a number of questions, and I know I would like to first address Justice McBride's questions. The rate case expense for the current rate case approved in the case was $2.3 million, a little bit over that, out of page 79, the commission order shows that, and, of course, that amount is not issued before this court. The amount of previously approved rate case expense for this test year was given on page 9 of our brief, and it was $657,530. Now, both those numbers get amortized in another three years. If you look to line 12 of appendix A to the commission order, which I believe, it's a fine called regulatory expense, you'll see that it's like a number of $900,000, roughly, that was allowed to be recovered. I have to tell the court, because rate case expense, the present wasn't, my brief did not address that too well. Illinois American's brief on pages 8 to 10 probably did a better job. The way rate case expense for this rate case, the current one is current, was determined to be, the company in discovery and evidence puts in how much they spent, so they know their pre-filing requirements, all the discovery costs, everything along that way, and there's an estimate of how much it will cost them to brief the case, briefs, reply briefs, briefs on exceptions to the proposed order, and that is what the rate case expense looks to, and is usually allowed. Now, the people in ARDMA have agreed that the rate case expense is not to be treated as an ordinary expense, because you cannot normalize an ordinary expense, you cannot amortize a normal expense. The utility gets their test year amount in full. The only thing is, as the court kind of recognized, the rate case expenses are unique. It only comes up when they file rate case expenses, and the company only has it because they're regulated under the Public Utility Act. An ordinary business does not have rate case expense if they just set their own rates without having to get regulatory approval. That undermines the people's argument about single-issue rate making, because if this was single-issue rate making, you couldn't amortize or normalize it. You'd have to give them the 100% rate case expense, which would allow the company to recover that rate case expense every 12 months that rates are in effect. The people seek a retroactive denial of the test year amount of the prior rate case expense previously imposed on the utility by the commission. The people's position is not supported by evidence, so I disagree with them. This is an accounting issue. They didn't present any accounting evidence. The people's witness did not testify that the recovery of the test year amounts of the previously approved rate case expense was retroactive or should be denied herein. The witnesses for Illinois American and the commission staff supported the recovery of the test year amount of the previously approved rate case expense. It should also be noticed as we're dealing with the previously approved rate case expense that the people did not challenge the amortization from the prior rate case or the amount allowed, and that under Section 10-201F of the Public Utility Act, it bars the party to seek such a retroactive attempt to alter the prior permission decision. I'm trying not to repeat myself and keep things moving along here. It should also be noted that although the people talk about single-issue rate making, the current recent cases about single-issue rate making had to do with recovery of expense through a rider, and the rate case expense herein is not recovered through a rider. It's just one of the many expenses the utility has that is covered through the flat customer charge and volumetric charge, just like every other expense recovered in the test year by this utility, the aggregate of the costs and demands of the utility. People have made the relevant argument that Illinois American controls its rates case expense. It's irrelevant to this particular issue. We're dealing here with the amounts approved by the Commission, and the rateable portion of those Commission-imposed amounts has to be recovered in the test year of this rate case, not Illinois American's claimed or expensed amounts. Well, the people's argument addressed itself to the question of whether these were legally mandated costs. And we rely on Mandel Brothers, which cited at least three points in our brief, 209-2, 205, 209-12, and the Citizen Utility Board case, which is 166-111 to 120-123, Illinois recognizes the quasi-legislative nature of the imposition of Commission rate decisions on utilities. The Illinois American in this case argued, in fact, that it should get even more rate case expense from the prior case, and the Commission denied it because they're seeking retroactive change. Now, they haven't appealed that up to the court, but the court should reject the people's attempt to retroactively deny the Commission-approved amounts. It's just and reasonable to recognize the rateable portion of rate case expense. The Commission has been doing this for years. Well, that doesn't make it right. No, but it makes it consistent. If you take a look at the… Well, it's not raised due to cost. Yes, and in Mississippi River Shield, after the Supreme Court said that, they said, oh, by the way, for 20 years you've never exerted jurisdiction over these sales. That constituted the equivalent of a statutory construction. When the Commission changes something, we have to have either sufficient facts or a change in law to justify it. In the Citizens Utility Board, the Commission staff wanted a different amortization period, and they wanted a different change on the carrying charges. And one of the rulings in the Supreme Court was, oh, in these two other cases, which are on much limited records, oh, you did something else. You're barred from doing it in this case unless you can show. You can't change your mind. So they overruled in a generic case that was issued just to address all the issues for all the utilities in Illinois, that we couldn't change what we did on two cases that were decided on much weaker records about the same time as we reopened the generic case. The courts have consistently said, if you do it this way, you've got to do it this way until you have evidence to change it or there is a change in law. It isn't just, oh, the Commission does it. We can throw it out and tomorrow do something else, even though the Supreme Court did say it in Mississippi Riverview, but then they proceeded to hold us to what we'd done in the past as well. What's the reason for that? Considering the arbitrary nature that we do one case, we do one thing, the next utility comes in, we do something else, the third utility comes in, we do the third thing, if we have an accounting issue or a finance issue or an engineering issue that we should treat these matters the same way, well, roughly, unless there is factual basis for treating these things differently with the different companies, sometimes that's come up where you have a water utility versus a gas utility versus a gas phone, since they operate differently, or unless a given practice was never challenged. True, it's never been reviewed before, so the court is not bound to any prior decision on the matter. Nonetheless, the courts have sustained the Commission if we do the same thing, and certainly have been reversed when we change something and the court didn't figure sufficient grounds for changing what we did. So there's some additional deference to a long established practice. Yes, yes. But the deference is normally given to the agency interpreting its own rules, true? That's one of them. What do you mean to say that we give deference to the agency interpreting a Supreme Court case? Isn't the traditional statement that we give deference to an agency interpreting its own rules, or the statute that it was created to interpret? Isn't that it? No. What I'm getting at is this interpretation is based on just a practice of doing. It's not based on some rule. Yes, it's a practice that the accountants, the finance, and the Commission has always done in the past for the reason that this is a test year amount  Yes, and you're right. There has not been a court case prior to that. Right. What I'm getting at is that the court cases that permit us to give you deference in reviewing your decisions or the agency's decisions is that the agency has been called upon to interpret its own rules or statutes that it was created to enforce and interpret, such as breach. But there isn't any particular rule that the Commission has really ever relied upon in granting this expense that occurred in a previous rate to the current test year. There's no case that... No, there's no recorded opinion on this matter whatsoever. And the ability to permit the rate case expense was basically created, wasn't it, with the 71 Supreme Court case? Or is it that it allowed it and said this is a permissible expense? Well, the Commission has been doing rate case expense nearly forever, as near as anyone can imagine. It didn't require the Supreme Court when it first got to say, oh, now it's legal, you've been doing it all this time. I mean, the court recognizes that we've tried to do what is just and reasonable. And you're talking in terms of deference. I'm arguing what the Commission does is the only solution on this record. No one came in to prove it's retroactive. It is treated differently. And in the reported cases, the two cases which dealt with the carrying charges, it's always been recognized that it's not treated as an ordinary expense, so it's not single-issue rate making, nor is it recovered from a rider. So on what basis would the court interfere with discretionary authority if the Commission decided to do this? Well, the question is, if you get rid of single-issue and retroactive rate making, what is your response to the test year rule? It is the test year amount. The testimony showed that this is the test year amount. If it had not been approved for Commission recovery in this test year, it wouldn't be there at all. For example, had the company waited one more year to file a rate case, there would not have been any previously-approved rate case expense to recognize because they would have recovered it 100%. You got involved in the argument. Sure, at some point when you advertise the rate case expense, if the rate stayed long enough, it goes to zero. The presumption is that those expenses that were recovered for a rate case expense are now being used as the other expenses that have risen during the period. The plain fact, though, over time, revenue degrades, at least many times since the end of the Second World War. At some point, the company will not... If you say we're giving you $5,000 for Xerox paper in the test year, at some point, paper prices will rise and will degrade to the point where they need another rate case or else we'll be slowly not making any... We're moving away from paper, didn't you know? Pardon me? I said we're moving away from paper, didn't you know? We're talking about the attorney fees and the expert fees that you even concede in your brief basically all... If anything, this should be remanded for any more details. Well, I haven't conceded... Well, didn't you say... I don't think you conceded at all, but you do say that if we didn't comply with the statute, the only thing that this court should do is remand it for further... Right. And it gets... Okay, this is the Section 929 argument. This court has before a commission order wherein no evidence or adjustment of fees was made in the case. So the commission had nothing to rule on. And in my brief, I cited the two, although there's probably many others, where someone put testimony in that one fee or something should be adjusted and we granted the adjustment. Well, what does the new statute mean then? Nothing? No, what it really means is prior to 9229, the commission was not required to expressly address or specifically assess the rate case expense, including the fees involved in the rate case expense. And to be honest with you, rate case expense is mostly fees. I mean, there's some other charges, but that's it. For example, I pointed to the... Although there no doubt have been cases in the past where the commission has dealt with rate case expense when it's been contested, there were probably other cases... It's just an effort of transparency, really? Isn't that what it is? An effort of transparency to establish what these fees represent, why they are just and reasonable, what kind of work was done. I mean, the traditional method for shifting fees is to review it based on the type of work done, the level of competence of the person preparing the work, how much time was spent on a task and whether that time was actually reasonable. Okay. What was done here, as has been done since... is that the billing has been... was presented in discovery to the commission staff and probably to all the other major parties since they all asked for the same documents. The major players always ask for everybody else's answer. The company would send them the answer to everybody else's discovery as well. But the commission, just like a court, does not put every matter of discovery into the record evidence. No, but in determining attorney fees or costs, generally speaking when there's been a fee shifting process where someone has given fees for whatever work, the court does examine those fees to determine whether they're reasonable. And the way they usually do that, the equation includes the things I've already talked about. So to say it's just and reasonable and that's it, doesn't really explain to anyone looking at it why it is. Well, okay, and there's two points on that. Of course, the court doesn't have a staff, so you would have to present everything to the court into evidence, otherwise you wouldn't be able to see anything. We don't. We have the right to establish our own processes under 10-101 of the Public Utility Act. We are not a judicial body. No, but you're bound by the statutes of the legislature. That is true. And this is something new. To suggest it doesn't have any meaning doesn't really follow general principles of statutory construction at all. Okay, and the other problem we have in the case is this, that no one's presented any evidence challenging anything. Honestly, Your Honor, as I said in my brief... But that challenge doesn't mean that then it's therefore just and reasonable. Well, on what basis? Just for the sake of argument, let's say you presented a bill, the commission has presented a bill, $350 an hour for four hours' worth. How and on what basis would they be able to deny that and point the testimony against it? And point the fact without the new statute. Is there any evidence that the commission can simply accept without any kind of scrutiny? Isn't the scrutiny exercised in determining the reasonableness of legal fees subject to the same scrutiny as all other evidence to see if it's just and reasonable? Yes. So then the statute comes along. What does the statute add? It requires the commission to expressly address rate case fees and rate case expense, and the commission did so. Now, whether that explanation was sufficient to the court under the new statute... But there's also a statute that requires the commission to explain the basis of its ruling, which would mean that when it does rule on a tariff, that it would comment on whether it's just and reasonable. Isn't that right? So then in that event, without the statute, the fees would be subject to the same prerequisite. So the question again becomes, what does the statute add? The statute requires that we have this paragraph that's in this case. But wouldn't you need that without the statute? So based on the requirement that the commission explain the basis for its ruling... In the absence of an evidentiary challenge... Couldn't one say there was a major change in the rate case expense from 2007 to 2010? I think that's... And there's no obligation to even look at why that increase was what it was? Well, Your Honor, I think the argument... The commission couldn't set the rates for this test year and this rate case expense by saying, gee, we've only given you a million dollars previously. We don't care that you spent two million. You only get a million. Is the commission... We should have evidence. Is the commission simply an umpire as a court would... No. Ordinarily be, although that's been criticized by... We are not just an umpire. We have the ability to shape the cases, to control marriage... But you have to exercise your own initiatives in addition to the initiatives exercised by the polarities in the case, by the parties. Yes. So the fact that something is unchallenged is not a complete response, is it? Well, except that courts have never sustained us if we do something that has no evidentiary basis on any rate matter. No court has ever said, gee, you've knocked off a few million dollars. Where did that come from? Well, we decided just to knock it off. It's like, well, no. We have to have it based in the evidence. Now, laws will differ. Laws can tell you you've got to do it irrespective of what you want to do or what's happened and may overcome an evidentiary evidence. But there's no right of the commission to say, no, you don't get more money. You have to look at the case. And the company presented its testimony supporting it. And staff supported the number. And there was no specific objection to any fee in the case. I think I'm going to leave that alone and try to get on to the jurisdictional issue. Under Section 1021A, petitions for review from the commission in this case were due to be filed in the appellate court by July 1, 2010. Illinois American's petition was filed on July 12, 2010, was untimely and should be dismissed for lack of jurisdiction. The jurisdictional issue before this court is constitutional. When the General Assembly has exercised its constitutional authority to set the time for taking administrative review actions, is it appropriate to use a procedural rule of the Supreme Court to alter that time? Is this issue fairly represented in your characterization? Because the preliminary issue is whether we're dealing with the same concept, with the same entity when you talk about appeals versus cross-appeals. Isn't that the preliminary issue? I think not. So that you don't have a situation where the legislature speaks one way and the courts speak another way until you first cross the bridge to tell us that cross-appeals and direct appeals are identical, coextensive structures. I say that under the Illinois Constitution, Article VI, Section 6, and under the teaching of the CERMAC Health Services case, when the General Assembly expresses the time for taking a direct administrative review action to the appellate court, that is the time and no further time is allowed. To point out a point, the appeals in this case aren't subject to Supreme Court Rule 303. The people's appeal would be untimely since 303 requires the filing in 30 days, and they file pursuant to the statute. Now we're arguing, we have the Illinois American arguing, well, we may not have until the 46th day to file this appeal because of Supreme Court Rule 303A3, and I say that that is an inappropriate use of that rule, that the adoption of that rule in 335I1 says the Supreme Court rules are adopted insofar as appropriate, and I say to change the time in which to take direct administrative review is inappropriate. So that there are no cross-appeals, then, with respect to administrative review? You know, I would point out to you, in page 6 of the Illinois American's refinery, they cite to a case, the Pekin, the city of Pekin case, in which they filed a cross-appeal. Now that case did not resolve the court of appeals. But they call it a cross-appeal. It was not a cross-appeal, is it? Because if you cannot have that extra time to file your cross-appeal, then you're at the mercy of the direct appellant as to whether you will ever have a choice. Because if your opponent, if the first appellant chooses to file on the 30th day, then the would-be cross-appellant is out of the running, isn't he? So then that cross-appellant can no longer say, well, I have an appeal to take, but why should I wake up a sleeping dog? So he'll wait to see if an appeal is filed by the opponent anyway, and then decide, in that event, I'll file my cross-appeal. He now no longer has that choice. And consequently, to protect their own flanks, everyone will have to make sure that they file a direct appeal without being able to consider whether their opponent is going to file an appeal or not. I think the problem there is that they're just attacking a commission decision. As I pointed out, in this case it's not true, but what if the appellant has no interest in the issues on cross-appeal? The commission is the only respondent by statute that has to show up on these cases. And so all you're doing is adding issues. The idea that necessarily every cross-appellant is strategically placing itself, I think, is wrong. This is not a private judgment between two parties in a divorce case. We're not talking about what may happen in one case or another. We're talking about the implication of eliminating a choice, an option, to an appellant to wait and see before he files or she files that appeal. That option is now taken away under your interpretation. My experience, frankly, is that I've seen a lot of defensive appeals taken from the commission, and when no one else appeals, the party moves to dismiss its appeal. I'm not sure this cross-appeal option gives anybody much of anything else that they don't have already. But that may not answer the court's question on this. The issue is the 35-day rule. It's always been that the 35 days is jurisdictional. According to this case, if you go with them, it's 46 days or may be actually more than that. No, it's just 10 days from the 35 days. They claim July 4th. There's nothing in 102 or whatever the number is that suggests that cross-appeal under Supreme Court rules is somehow done away with. There's no language. No, the statute says appeals must be taken in 35 days, not 46 days, not 48 days. I don't see how you justify this based on the Chicago case, the city of Chicago case, because there the question really was answered that the jurisdiction occurs once that direct appeal is filed and that the court has jurisdiction for the cross-appeal that was filed. And they never addressed the constitutional issue. They never addressed the timing issue. The city of Chicago's only position was that since we withdrew our main appeal, the cross-appeal dies as well, which the court ruled against. All the court ever says is that the court's vested with us. Well, doesn't the Supreme Court say that the Supreme Court rules trump the Supreme Court rules? No, I disagree. The Supreme Court in CERM Act clearly stated that it is a balancing act. But isn't there some language in there that in the event of conflict, the Supreme Court rules control? Isn't there better jurisdiction? The language that's used on procedure rather than jurisdiction. What is jurisdiction if not procedure? Jurisdiction is the basis. This court would be abolishing Section 10201 of the Act. It says 35 days, but it doesn't matter anymore. It says that it has to be explicit, and 10201 is not explicit about cross-appeals. But what CERM Act says is that when there is a conflict, then this court's rules, our rules, will control. And that was because in CERM Act, all the statute says was the appeal shall be taken directly to the appellate court under the Administrative Review Law. It did not provide any time period for taking it, and that's why the court said it wasn't a direct conflict. Now, this case is a direct conflict with the 35 days established in the statute. Well, it's really not a conflict because it doesn't say anything about the 10 days. Okay. I think the issue was framed very articulately. Okay. Service, the service fees issue. The commission directed in a prior order that Illinois American conduct a study comparing the cost of each service obtained from the service company to the cost of such services had they been obtained by competitive bidding in the open market. There was no appeal by Illinois American challenging that that was abusive. We didn't understand it or anything. They said, oh, yeah, we'll do it. And as a matter of fact, they did comply in a minor study they did for their Belleville labs. But when it comes to their main study, oh, we just look at market survey data. That was not what the commission wanted. That's what the commission stated. So the issue before the court then. Well, the question is what happens, to what extent does the commission have discretion to impose requirements, that boutique type of requirement that are not coextensive with ordinary rules of evidence, with what under the rules of the common law and rules of evidence would allow as proof, and instead ask for specialized proof? And what happens if it asks for the specialized proof and doesn't get it, but does get competent proof? Can it abandon the competent proof? And if that is so, isn't that a sanction? And can they then, you have to answer, can they sanction? I don't agree with the characterization. I would instead point that Section 511 requires the utility to do everything necessary or proper in order to secure compliance with an observance of a commission direction in a commission order, which they did not do, and that the third district case- It did give you some evidence there that you have not repudiated in its quality, to its quality and to its efficacy in establishing the data that will help you resolve the justness and reasonableness of the cost. Well, but the question really here is whether or not the commission direction has authority over all Americans or whether our authority is negatory. So now you are basing it, framing it as a sanction. No, I'm basing it- You're basing it against the authority. The authority was thwarted. Okay. Then what? If the authority is thwarted, what happens next? Supposing there is still some good evidence there for the proponent, and supposing there is some weak evidence on the other side. Well, Your Honor, the commission is the judge of the evidence. No, no, no. Oh, yes, we are. The commission is not the sole and exclusive determinant of the sufficiency of evidence, is it? Well, Your Honor, I think it is. You have to show that we violated- that our decision on facts is against the manifest weight of the evidence. Okay. Manifest weight of the evidence. And the commission's adjustment was based both on the attorney general's witnesses- Supposing the commission itself said- They didn't give us the evidence we would look to. They gave us other evidence without an evaluation of that alternative evidence that the utility did present. Well, I mean, if the commission is a rubber stamp that the county puts in the number, we must give it to them. And we have no right to require them to give us evidence so we can determine that it's just and reasonable. Well, supposing the requirement that the commission makes is unduly expensive and difficult to obtain. Then they could have appealed that order and said so. Where would they appeal it? Is there a finality here for an appeal? They could only argue with the commission. Come now, you don't want us to do this and mislead all of these would-be competitors to submit bids that they have no hope of ever getting. Well, except they were able to get it when they did the lab study. You know, Your Honor, I mean, this really comes down to a basic thing. The commission wanted some justification for the rather increasing cost of this service of company fees. They had some idea. That's what they said in the prior case. That's why the condition was made. And we had now increasing service company fees and were given an inadequate cost study in the commission's opinion. Now, okay, much has been made of the fact commission staff did not oppose the Illinois American Service Company cost study. They didn't say it was reasonable, but they also never took any chance to add it saying it was unreasonable. However, the commission staff, with no intention of neglect, does not have the authority to eliminate the commission-imposed condition on competitive bids. Otherwise, public rights, in this case the public utility's obedience to the commission orders, as provided in Section 5-101, will be lost. I mean, Your Honor, it really just comes down to this. Under the Bell case, it said that the Illinois Bell cost study was rejected for being inadequate, and the commission made an adjustment to refer. Isn't a market cost study inferentially informative as to the results that could be obtainable through competitive bidding? I mean, are competitive bidders going to bid below their cost levels? Sure they will. If they want the business, some people will go below their publish rate. Are you going to accept the bid from a company that is committing suicide with that bid? Well, they may not. They may need the bid. You know, Your Honor, I mean, the whole point of the bidding requirement was to avoid this kind of thing of just saying, oh, we found a listing. These people say just that, the cost of service. Well, at that point, there's no basis. You don't know that that's what they'd actually charge this company for doing it. If they actually sat down and did it, they would actually decide what their cost would be, how much they need to make a profit. Sometimes their bid would be lower than what they published as the rate. Sometimes it would be higher because it's a big utility and it's probably a pain in the neck to deal with. Hypothetically, what would happen if Mr. Smith did not testify to the 5.5%? You had nothing on the other side. What would the commission then do? I don't know. I have no idea. We had that evidence. We had some evidence from Illinois American that we justified the decision on that the 5% was trending, which is what the commission relied on, not just Mr. Smith's testimony. You know, if you say there was absolutely no evidence, I guess then the commission jurisdiction really is not authoritative. There's nothing we can do about it. We've had in the past where we've ordered utilities to do studies, and the studies, because they were outside the test year, and if you look at them, you can't use them for anything. It doesn't matter that they show they're overpaying or doing something wrong two years before the test year. You have to show that it's happening in the test year. So, I mean, this was an attempt to try to get a handle on this, make sure that what we're giving the company is just and reasonable by having an adequate cost study. So, should the commission be able to characterize the quality of the evidence that it seeks, or simply ask for evidence and then decide the way a court would, whether the evidence is sufficient, and then to make a choice as a trier of fact would between the conflicting evidence? Well, in this case, this condition was created by the commission, by the commissioners themselves. The argument that their conditions are only good if someone steps up and says that it is, I find somewhat disturbing. We're not a judicial body where we just sit here and somebody says this, and somebody says that, or someone says nothing, and we go rubber stamp, that's the number. This is all dealing with accounting and financing, and it does require a certain amount of independent judgment. But the issue here is compliance with our prior order, and it's very simply that. If their cost study gets thrown out, then they have not even shifted the burden of proof on the matter. The only other issue was the issue about the public comments, but the Council for Illinois Americans didn't actually get to really argue anything about that, so unless the court has questions, I'll let it go, but it well exceeded its time. Thank you. A few points, Your Honors. Justice Gordon, I think there may be a logical misstep in your analysis of why it would be unfair. Well, maybe I'm wrong, but we can talk about this. You're concerned about the unfairness or the taxable disadvantage someone has in one of these appeals when they want to be a cross-talent. But we have to recall that under the Administrative Review Law, all respondents are named by the petitioner. So everybody is told there's going to be a proceeding, and respondents can't participate if they decide to. That's why you have extra blue briefs here, because the Village of Homer, Glenn, and Bolingbroke were named as respondents, and they came forward and they filed briefs. So the question is, you get a decision from the agency, and you decide, I can live with this, I'm not going to do anything. And then somebody files a petition, and you're named a respondent, and your position then is, I'm defending the decision I can live with. You can't complain about that decision, but you can show up and defend it. So there's no unfairness or taxable problem. My argument is that direct petitions for review are just different than anything that the law would otherwise require with regard to cross-appeals. The commission has said that the case that Your Honor asked about, Judge McBride, how would we distinguish it? And they said that in that case there wasn't a time required for the petition to be filed. Yes, if that's true, then that would certainly distinguish that case. If it's not true, then I would just suggest that the decision is wrong. So with regard to waivers, with our argument on the unamortized prior rate case expense, our witness, Mr. Smith, said this is not right. It is allowing a double recovery, and going forward it shouldn't be allowed by the commission. And our argument to the commission was, Mr. Smith, our witness, has touched on the problem and he's explained it, but he's said something that's legally not correct. If unamortized rate case expense violates the test year rule, which he just said it does, then it can't be awarded in this case. The company and the commission take issue with the fact that we didn't object in 2007. We could object in 2007. We didn't know we'd be aggrieved until 2009 came along and they tried to say we didn't recover. And so this issue is joined. It's important. We urge the court to take it, and I always step back when someone accuses me of waiver and say it's a limitation on the parties in the court. This is a good case for the court to reach this question. It's never come up to an appellate court before, and it has the potential to be a lot of money in cases going forward. With regard to the service company fee, let's not forget that Mr. Smith said, he's an expert, he didn't say a lot, but he did say that 5, 5.5% was a reasonable amount for what was done. That's evidence. If the commission wants to weigh that evidence, they have a lot of evidence. It has some foundation, though, doesn't it, to be evidence that it's happened. But Mr. Smith said he reviewed everything that was in the record. If this were in a 191 affidavit or summary judgment, wouldn't it be conclusive? It might be, Your Honor, but they're subject to cross-examination, which you don't have in an affidavit, and so I think that changes everything. I mean, this was all done on paper, but that's because the parties did it pursuant to the commission's rules. That's what they agreed to. If they wanted to cross-examine Mr. Smith on that, they could have. He said it. They didn't like it. They should have challenged him. They don't challenge him. They dumped a lot of other evidence in, sure. But if they don't like Mr. Smith's evidence and they should criticize it, then the commission can make a decision as to whether they want to use it or not. That takes care of the whole public comment question. I know it's not been raised, but there is evidence in this case about that 5%. I would argue it's sufficient to uphold the commission. Lastly, with regard to attorney's fees, 9229, the burden is always on the company to establish the reasonableness of the fees. The General Assembly here suggested that it's not been happy with the way that these records have been prepared in the past. I would suggest to Your Honors that any record awarding fees has to show you, the reviewing court, that the fees are just and reasonable. Otherwise, you can't affirm or reverse or modify the decision. This record doesn't do it. I'm not asking you to change the fee award. I'm happy with the remand, but I would like the remand to be to the commission to do the work that's required by the new section and to make the record so that if it comes up again, we can talk about whether those fees are fair and reasonable. Unless there are other questions? Thank you. That concludes the argument. I have one more. Okay. Your Honors, a few points by way of rebuttal. To respond on the issue of rate case expense, I think there's a couple of things that the discussions up until now have not been entirely clear on. I want to make sure that Your Honors understand to the best of my ability. The test year level of rate case expense, it's really what the exercise is, is to try and establish what a representative level of a fluctuating expense that may or may not occur in the test year. Some of it may occur in the test year. Some of it may occur outside the test year. The question is, how do you then establish a representative level of that expense? What the Commission has done in decisions going back decades is they've established a careful balancing of factors. They've set the amortization period to try and avoid over-recovery, whereas the amortization period... They let the utility select its own test year. Historically, is that right? Now, how does it select the test year prospectively? Well, the prospective test year would be a period, I believe, that incorporates any 12-month period up to 24 months after the case is filed. I see. So it's prospective as of the filing date, but it's not prospective as to the hearing date? It would still typically be prospective as to the hearing date. So, for example, in the prior case, I guess the test year had started by the time we got to, say, the briefing phase of the case. The case concluded in 2010, which was the test year. So some rate case expense was occurred in the test year. Some was not. But there's a balancing here. The amortization period is set in order to avoid over-recovery if the period is too short, but there are other balancing factors as well. The unamortized balance of the prior case expense is not included in rate base. So the company does not recover from rate bearers the carrying charges for the unamortized balance of the expense. That's formed by shareholders, and the courts have approved that as a reasonable sharing of this type of expense. So you have a careful balancing of factors going back decades, and I think that that past practice is entitled to deference. Your Honor asked what rules are the commission interpreting? The commission interpreting has been titled to deference, and I would say, one, the test year rules, and two, there are specific filing requirement rules related to unamortized rate case expense amounts from the prior case. The Part 285 Rule 2853085D is one of the rate case filing requirements. It says that if amortization of prior rate case expense is included, it has to be shown in the schedule. So there are rules in the commission's rules governing this expense. The other point I would like to make in conclusion relates to the service company fees and the discussion with counsel for the commission, and the question has come up, what is the commission to do if it finds that it requested evidence and that evidence was not what was required? Where are the commission's teeth on this? And the answer, I think, is that the commission's response is to utilize the tools provided to it in the Public Utilities Act to conduct investigations, initiate complaints. They have the authority to impose civil penalties. So if they feel their order has not been complied with, they have avenues to pursue to address that. However, where the utility has incurred a reasonable and prudent level of expense, the commission's response to not receiving information that it requested or taking the position that it hasn't received the information that it requested, the commission's response should not be to arbitrarily dock that reasonable and prudent amount because the utility is entitled by law to recover that reasonable and prudent amount. The commission has other avenues which to pursue if it feels that its order has not been complied with. Thank you, Your Honor. Thank you. This case has been argued with consummate professionalism, and so were the briefs reflective of that same high-quality level, including the briefs of the villagers. And this case has given us a lot to think about and will now be taken into account.